IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19–cv–02742–CMA–SKC

BETTY JEAN JOHNSTON,
on behalf of herself and all others similarly situated,

    Plaintiff,

v.

CAMINO NATURAL RESOURCES, LLC,
a Delaware limited liability company,

    Defendant.

## CLASS REPRESENTATIVE'S MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class Representative Betty Jean Johnston ("Class Representative") moves the Court for final approval of the:

1. proposed class action Settlement;
2. Notice campaign; and
3. proposed Initial Plan of Allocation.

Class Representative's proposed final Judgment is attached as **Exhibit 1**,[1] and Class Representative's proposed Initial Plan of Allocation Order is attached as **Exhibit 2**. With zero objections filed to date and only four class members purporting to opt-out as of this filing,

---

[1] The proposed judgment was attached as Exhibit 2 to the Settlement Agreement ("SA"), Doc. 53-1. Plaintiff will also submit native versions of the proposed orders to the Court following the objection deadline (April 28, 2021) in advance of the Final Fairness Hearing.

Class Representative submits that the Settlement is fair, reasonable, and adequate, and should be finally approved.[2]

## BACKGROUND

In the interest of brevity, Class Representative will not recite the entire background of this case again. Rather, Class Representative refers the Court to the Motion for Preliminary Approval (Doc. 53), the Joint Declaration of Class Counsel ("Joint Counsel Decl.") (Doc. 61-1), the pleadings on file, and any other matters of which the Court may take judicial notice, all of which are incorporated as if fully set out in this memorandum.

On November 30, 2020, the Court issued an order preliminarily approving the settlement, approving the form of notice, and setting a date of May 12, 2021, for the Final Fairness Hearing. Doc. 55 at 8 ("Preliminary Approval Order"). The Court also approved the Notices of Proposed Settlement of Class Action ("Class Notices"), one form for mailing and one for publication. *Id.* at 6–7. The Court ordered that Notice be given to the Class members in accordance with the Plan of Notice, as outlined in the SA, and found that the Notices being provided are "the best notice practicable under the circumstances." *Id.* ¶¶ 8–9. Since preliminary approval, Notice was mailed, by first-class mail, as ordered by the Court. And Notice was published in *The Oklahoman* and *The Tulsa World*, as directed in the Preliminary Approval Order. *Id.* ¶ 9.

The facts regarding certification haven't changed since the Court entered the Preliminary Approval Order—class certification remains proper. A general plan of allocation

---

[2] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the SA.

was described in the Class Notice sent to Class Members, along with the other material terms of the SA. *See* SA, Doc. 60-1. Consistent with the Notice and the Plan of Allocation, the preliminary allocation shows the proposed distributions to each member of the Settlement Class and an amount of distribution. *See* **Ex. 3**, Initial Plan of Allocation.[3]

Following mailing of the Notices and Publication, Members of the Settlement Class have 120 days to request exclusion from the Settlement and 134 days to file an objection. Doc. 55 at 8–11. To date, no objections have been received and only four requests for exclusion have been received. The small number of purported opt-outs and zero objections to the Settlement support the conclusion that the Settlement and Plan of Allocation are fair, adequate, reasonable, and in the best interests of the Settlement Class, such that final approval should be granted.

## ARGUMENT & AUTHORITY

The procedure for reviewing a proposed class action settlement is a well-established two-step process. First, the Court conducts a preliminary analysis to determine if the settlement should be preliminarily approved such that the class should be notified of the pendency of a proposed settlement. Manual for Complex Litigation § 21.632 (4th ed. 2004). Second, the class is notified and provided an opportunity to be heard at a fairness hearing before the settlement is finally approved. Newberg on Class Actions § 11.25, at 38 (4th ed. 2002). The Court already carried out this first step with its Preliminary Approval Order, and notice was effectuated pursuant to the terms of the SA and in the form and

---

[3] Class Counsel utilized accounting expert, Barbara Ley, to formulate the Initial Plan of Allocation. *See* Doc. 61-3.

3

manner approved by the Court. As to the final step, courts in the Tenth Circuit consider four factors when deciding whether to finally approve a class action settlement:

a. Whether the proposed settlement was fairly and honestly negotiated;
b. Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
c. Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
d. Whether, in the parties' judgment, the settlement is fair and reasonable.

See *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Each factor supports final approval.

**1.   The Court Properly Certified the Settlement Class and Should Confirm this Finding by Finally Certifying the Settlement Class Under Rule 23**

Before addressing the four factors, the Court must find class certification remains appropriate for settlement purposes. The Court certified the following Settlement Class:

All non-excluded persons or entities:

i. Who received working interest, royalty, and/or overriding royalty payments from Defendant for oil and/or gas proceeds from oil and/or gas wells located in the State of Oklahoma with check dates up to and including May 31, 2020.

ii. The persons or entities excluded from the class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; and (3) the persons or entities listed on Exhibit 5 to the Settlement Agreement and their affiliates and related entities.

Doc. 55 at 2–3, ¶ 3. Class certification remains proper under Rule 23(a) and (b)(3) for settlement purposes for the reasons set forth in the Preliminary Approval Motion and Memorandum (*see* Doc. 53). Defendant also consents to certification of the Settlement Class.

The prerequisites for class certification under Rule 23(a) and (b)(3) are satisfied. First, Rule 23(a)(1)'s numerosity requirement is satisfied because the Settlement Class consists of over 9,000 of owners, whose joinder would be impracticable. *See Trevizo v. Adams*, 455 F.3d 1155, 1161–62 (10th Cir. 2006). Second, Rule 23(a)(2)'s commonality requirement is met because "many questions of law and fact exist that could be answered uniformly for the Settlement Class using common evidence." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *see also Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class" (internal citations omitted)). Each of these common issues stems from a common body of law—the statutory law of the State of Oklahoma. The real property interests at issue are property located in the State of Oklahoma, and the payments at issue are governed by Oklahoma substantive law. Thus, any choice of law analysis would result in the application of Oklahoma law to the legal claims and, as such, there are no other states' laws implicated by this action, nor any other choice of law issues that could affect the Court's commonality analysis here. Third, Rule 23(a)(3)'s typicality requirement is satisfied because Defendant treated all owners the same for purposes of proceeds payments, the same legal theories and fact issues underlie each Class Member's claims, and all Class Members suffered the same injury arising out of the same facts that can be proven by the same, common evidence. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198-99 (10th Cir. 2010). Finally, Rule 23(a)(4)'s adequacy of representation requirement is satisfied because there are no conflicts—minor or otherwise—between Class Representative and the other Class Members. *See Tennille v. Western Union Co.,*

5

785 F.3d 422, 430 (10th Cir. 2015) ("Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.") (internal citation omitted). Class Representative and Class Counsel have prosecuted the Litigation vigorously and Class Counsel is unquestionably qualified to represent the Class here. *See* Doc. 61-1, Joint Counsel Decl.

Additionally, Rule 23(b)(3)'s predominance and superiority requirements are satisfied here. *Tyson Foods*, 136 S. Ct. at 1045; *Menocal*, 882 F.3d 905, 914–15 ("[T]he predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues" (citations omitted)). The predominance requirement is met because the substantive claims are all common (Oklahoma law under Oklahoma choice-of-law principles) as are the aggregation-enabling issues of fact (chiefly, Defendant's common course of late payment of proceeds without interest to Class Members). The common questions under the shared law predominate over and are more important than any potential individual issues that theoretically could arise in the Litigation. And, the superiority requirement is satisfied because resolving the Litigation through the classwide Settlement is far superior to any other method for adjudicating these claims.

The Court properly certified the Settlement Class and, because Class Representative has proven that each of the requirements for certification under Rule 23(a) and (b)(3) remain satisfied, this should be confirmed with the final certification of the Settlement Class.

### 2. The Court Should Grant Final Approval of the Settlement

The Court has broad discretion in deciding whether to grant approval of a class action settlement. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). "As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). As demonstrated below, each of the four factors identified by the Tenth Circuit weighs in favor of final approval.

#### A. The Settlement is the product of extensive arm's-length negotiations between experienced counsel

The fact that the Settlement was fairly and honestly negotiated by qualified, experienced counsel supports final approval. *See Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid."). The negotiation process is to be examined with reference to the experience of counsel, the vigor with which the case was prosecuted, and any potential coercion or collusion regarding the negotiations.

Here, the Settlement is the product of extensive arm's-length negotiations between the Parties' experienced counsel. *See* Doc. 61-1, Joint Counsel Decl. ¶¶ 11–12. A hard-fought negotiation process supports the conclusion that the Settlement was fairly and honestly negotiated. *See Ashley v. Reg'l Transp. Dist.,* No. 05-CV-01567-WYD-BNB,

7

2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008) (finding settlement fairly and honestly negotiated where the parties engaged in settlement negotiations over four months).

Additionally, Class Counsel has unique experience with oil and gas royalty under-payment and late payment class actions. Bradford & Wilson PLLC regularly represent plaintiffs in oil-and-gas class actions, as well as other complex commercial and consumer class action litigation, and have obtained settlements in several underpayment or late payment class actions in Oklahoma state and federal courts. *See* Doc. 61-1, Joint Counsel Decl. ¶¶ 1–2. Class Counsel's experience positioned them well to comprehensively examine the massive amount of information and data produced in this litigation, enabling them to make informed decisions about the strengths and weaknesses of the case. *Id.* ¶¶ 5–11; *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *12 (N.D. Okla. Dec. 2, 2011). Further, Class Representative was involved in the negotiations and believes the settlement process resulted in an excellent Settlement for the Settlement Class. Id. ¶¶ 41–42. Class Representative expended time and resources prosecuting the Litigation, including providing documents, communicating regularly with Class Counsel, and participating in the negotiations that led to the Settlement. *Id.* The Parties and their lawyers were well prepared for the serious negotiations that led to the Settlement.

These facts demonstrate the Settlement resulted from serious, informed, and non-collusive negotiations. The first factor supports final approval.

### B. Serious questions of law and fact exist, placing the ultimate outcome in doubt

The existence of serious questions of law and fact place the ultimate outcome of this Litigation in doubt, and such doubt "tips the balance in favor of settlement because

settlement creates a certainty of some recovery and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-CV-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) (internal citations omitted).

There are numerous factual and legal issues about which the Parties disagree—issues that would ultimately be decided by this Court or a jury. Despite Class Representative's optimism regarding her chances, the Parties vehemently disagree on numerous issues, and Defendant denies any wrongdoing giving rise to liability. Settlement renders the resolution of these issues unnecessary and provides a guaranteed recovery in the face of uncertainty. Because this Litigation presents serious issues of law and fact that place the ultimate outcome in doubt, the second factor supports approval.

### C. The value of immediate recovery outweighs the mere possibility of future relief after long and expensive litigation

The complexity, uncertainty, expense, and likely duration of further litigation and appeals also support approval of the proposed Settlement. The immediate value of the $2.1 million cash recovery alone outweighs the uncertainty, additional expense, and likely duration of further litigation. The Settlement Class is "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See McNeely*, 2008 WL 4816510, *13. The Settlement represents a meaningful recovery for the Settlement Class without the risk or additional expense of further litigation. These immediate benefits must be compared to the risk that the Settlement Class may recover nothing after summary judgment, trial, and likely appeals, possibly years into the future. *See In re Sprint Corp. ERISA Litig.*,

9

443 F. Supp. 2d 1249, 1261 (D. Kan. 2006). Furthermore, the Settlement also provides future benefits to the Settlement Class, which are estimated to have a value of $7 million, for a Gross Settlement Value of $9.1 million. *See* Doc. 61-3, Ley Decl. ¶¶ 5–6.

While Class Counsel is confident in their ability to prove the claims asserted, they also recognize liability is far from certain and many potential obstacles to obtaining a final, favorable verdict exist. Even if Class Representative were able to establish liability at trial, Defendant would have vigorously argued the damages are far less than the Settlement and raised a number of defenses to further whittle down the damages. Through the Settlement, the Settlement Class is guaranteed a cash payment without the attendant risks of further litigation.

Class Counsel is intimately familiar with the risks of proceeding with the Litigation because they have extensive experience prosecuting royalty class actions. *See* Doc. 61-1, Joint Counsel Decl. ¶¶ 1–2. Class Counsel believes the value of the Settlement outweighs the risks of proceeding further with the Litigation. *Id.* ¶ 35. When the risks and uncertainties of continuing the Litigation are compared to the immediate benefits of the Settlement, it is clear the Settlement is fair, reasonable, and in the best interests of the Settlement Class.

The third factor supports final approval of the Settlement.

**D. Class Representative and Defendant agree the Settlement is fair and reasonable**

The fact that Class Representative and Defendant believe the Settlement is fair and reasonable supports final approval. Class Counsel and Class Representative only agreed to settle the Litigation after considering the substantial benefits the Settlement

10

Class will receive, the risks and uncertainties of continued litigation, and the desirability of proceeding under the SA.

Class Counsel's judgment as to the fairness of the Settlement also supports final approval. "Counsels' judgment as to the fairness of the [settlement] agreement is entitled to considerable weight." *Childs*, 2011 WL 6016486, at *14 (citation omitted). Class Counsel believes the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and the Settlement is in the Settlement Class Members' best interests. *See* Doc. 61-1, Joint Counsel Decl. ¶ 16. This last factor fully supports the Court's final approval of the Settlement. Indeed, all four factors considered by the Tenth Circuit support final approval of the Settlement.

3. **The Notice Method Used was the Best Practicable Under the Circumstances and Should be Approved**

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Also, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In terms of due process, a settlement notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Fager v. CenturyLink Comm'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). "The Supreme Court has consistently endorsed notice by first-class mail", holding "a fully descriptive notice…sent first-class mail to each class member, with an explanation of the right to 'opt

out,' satisfies due process." *Id.* at 1173. Here, the Notice campaign carried out by Class Counsel and the Settlement Administrator is substantially comparable to and perhaps exceeds the highly successful notice campaigns completed in other oil-and-gas class actions approved by district courts in Oklahoma.[4]

In its Preliminary Approval Order, the Court preliminarily approved the form and manner of the Notice disseminated by the Settlement Administrator, finding the Notice and Summary Notice are "the best notice practicable under the circumstances, constitute[s] due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfy the requirements of applicable laws, including due process and [Rule] 23." *See* Doc. 55 at 5, ¶ 8. The Court directed dissemination of the Notice Documents in accordance with the SA and the Preliminary Approval Order. *Id*. ¶ 9.

The Notice was mailed to all Class Members with addresses provided by Defendant and further diligence was conducted to ascertain proper mailing addresses. The Court-approved Summary Notice was also published in two newspapers of local circulation, as directed in the Preliminary Approval Order. *Id.* ¶ 9. The Notice fully informed Class Members about the Litigation, the Settlement, and the facts needed to make informed decisions about their rights. Also, the Notice, along with other documents germane to the Settlement, were posted on the website created for and dedicated to this Litigation, www.johnston-camino.com. This website is maintained by the Settlement Administrator and displays additional information regarding the Settlement.

---

[4] Class Representative will supplement this Motion with final notice statistics following the deadline for requests for exclusion and objections.

In sum, the form, manner, and content of the Notice campaign were the best practicable notice, and their contents were reasonably calculated to, and did, apprise Class Members of the pendency and nature of the Settlement and afford them an opportunity to opt out or object. Therefore, the Court should grant final approval of the Notice given to the Settlement Class here.

### 4. The Plan of Allocation Should Be Approved

The Court should also approve the proposed Plan of Allocation, which is attached as **Exhibit 3**. Like the Settlement itself, a plan of allocation must also be approved as fair and reasonable. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1262 (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 462). Where, as here, a plan of allocation is formulated by competent and experienced class counsel, the plan need only have a reasonable, rational basis. *Id.* As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. *Id*.

Class Counsel, together with Class Representative's expert, have formulated the Plan of Allocation by which Class Members will be reimbursed proportionately in relation to their individual claims for deductions or late payment of proceeds. Importantly, this is not a claims-made settlement, nor is it a settlement where a Class Member must take further action to participate. Instead, every Class Member who did not effectively opt out of the Settlement will receive funds for their respective allocation. Specifically, the Net Settlement Amount will be allocated to individual Class Members based upon the industry standard and objective factors described in the SA. See Doc. 53-1 at 22, ¶ 6.2. Pursuant to the SA, the Plan of Allocation further assumes a reduction for Plaintiff's Attorneys' Fees,

Litigation Expenses, Administration, Notice, and Distribution Costs, and a potential Case Contribution Award, which amounts will ultimately be determined by the Court at the Final Hearing. *See* Doc. 61.

Because the proposed Plan of Allocation was formulated by competent and experienced Counsel and is based on the type and extent of each Class Member's particular loss, the Court should approve it as fair, reasonable, and adequate.

## CONCLUSION

Class Representative and Class Counsel respectfully request that the Court enter the proposed final Judgment, attached as **Exhibit 1**.[5] This Order grants: (1) final certification of the Settlement Class; (2) final approval of the Settlement as fair, reasonable, and adequate, and in the best interests of the Settlement Class; and (3) final approval of the Notice to Class Members. Class Representative and Class Counsel also respectfully request that the Court enter the proposed Initial Plan of Allocation Order, attached as **Exhibit 2**, to govern the allocation and distribution of the Net Settlement Amount to Class Members.

Respectfully Submitted,

/s/ **Reagan E. Bradford**
Reagan E. Bradford
Ryan K. Wilson
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770

---

[5] **Exhibit 1** reserves space for the Court to rule on objections, if any, and to determine the approved requests for exclusion.

Facsimile: (405) 234-5506
reagan@bradwil.com
ryan@bradwil.com

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

    I hereby certify that on April 14, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to attorneys of record at the following email addresses:

David Holman
dave@crishamholman.com

/s/ **_Reagan E. Bradford_**
   Reagan E. Bradford